# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAWN GODFREY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15 C 11284 |
| ) | |
| A. SHRESTHA and ) | |
| COOK COUNTY, ILLINOIS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Dawn Godfrey, a former pretrial detainee at the Cook County Jail, has sued correctional officer Amita Shrestha and Cook County under 42 U.S.C. § 1983. Godfrey alleges that Shrestha failed to protect her from being attacked by three detainees in violation of the Fourteenth Amendment's Due Process Clause.[1] U.S. Const. amend. XIV § 2. Shrestha denies Godfrey's claim, arguing that Godfrey cannot establish that she acted with deliberate indifference. Defendants have moved for summary judgment. For the reasons stated below, the Court denies defendants' motion.

## Background

The Court takes the following facts from the parties' briefs and exhibits on summary judgment. Where facts are in dispute, the Court takes them in the light most favorable to Godfrey, the non-moving party.

---

[1] Godfrey has sued Cook County as a potential indemnitor in the event the Sheriff does not indemnify Godfrey for a judgment imposed upon her. *See Carver v. Sheriff of LaSalle Cty.*, 324 F.3d 947 (7th Cir. 2003).

Godfrey was a detainee at the Cook County Jail from January 25, 2015 until late March 2015. The division of the jail where Godfrey was housed has three floors and two living units (tiers) on each floor. When not confined to their cells, detainees are permitted to be in their floor's dayroom, dayroom bathroom, or shower area. On the evening of February 19, 2015, Godfrey was attacked in the dayroom by three other female detainees, Goodman, Betton, and Brownlee.

At some point before the evening of February 19, 2015, either that afternoon or the day before, Godfrey says she had a verbal confrontation with Goodman and Betton. She contends that in that confrontation, Goodman and Betton threatened her and tried to attack her. Godfrey further contends that on the evening of February 19, 2015, she had another confrontation with Goodman and Betton. She testified during her deposition that she was in the dayroom playing games with other detainees when Goodman, Betton, and another inmate, Brownlee, began to throw ice at her. Godfrey says she knocked on the interlock glass that separated the dayroom and the monitor room where correctional officer Shrestha was stationed. When Shrestha came into the dayroom, Godfrey says, she immediately informed Shrestha that Goodman, Brownlee, and Betton were throwing ice at her and that she had a confrontation with Goodman and Betton on a prior occasion in which they tried to attack her. Godfrey alleges she told Shrestha that the other detainees were threatening her and that she needed help.

Shrestha testifies that she knew that Brownlee had a tendency of causing trouble in the facility, including a history of getting in altercations with other detainees. Despite protocol dictating otherwise, Shrestha did not remove Godfrey from the other detainees. Shrestha says she observed Goodman, Brownlee, and Betton arguing and gave them

2

verbal commands to stop, but they did not comply. Shrestha says she then called a 10-10 over her radio—a signal that there is a fight in progress. Shrestha says she then ordered the detainees to stand outside their respective cell doors.

The detainees followed Shrestha's instructions and made their way to their cells. On the walk down the hallway to the cells, Godfrey contends, Goodman, Brownlee, and Betton began shouting at her. Goodman, Brownlee, and Betton then attacked Godfrey. Godfrey contends that the three detainees hit her in the face, body, stomach, and head. She says that she suffered an orbital fracture and sustained lasting nerve damage in her right eye.

## Discussion

When considering a motion for summary judgment, the Court construes "all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). The Court does not "weigh evidence or determine the credibility of a witness's testimony," as those determinations are reserved for the finder of fact. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011) (internal quotation marks omitted). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**A.  Deliberate indifference**

A section 1983 claim by a pretrial detainee alleging that jail officials failed to

protect her from harm is analyzed under the Fourteenth Amendment's Due Process Clause. U.S. Const. amend. XIV, § 2; *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002). A jail official (such as a correctional officer) is liable under section 1983 for failing to protect a detainee "only when [she] is deliberately indifferent to a substantial risk of serious harm" to the detainee. *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). "A finding of deliberate indifference requires a showing that the [correctional officer] was aware of a substantial risk of serious injury to [the detainee] but nevertheless failed to take appropriate steps to protect [the detainee] from a known danger." *Butera*, 285 F.3d at 605. Thus, to show that a jail official acted with deliberate indifference, an injured party must show that 1) she was exposed to a substantial risk of serious harm, 2) the jail official had actual knowledge of the threat, and 3) the jail official acted unreasonably in light of the known risk. *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015); *Guzman v. Sheahan,* 495 F.3d 852, 857 (7th Cir. 2007).

Shrestha contends that Godfrey cannot show that she was exposed to a substantial risk of serious harm, that Shrestha had knowledge of the risk, or that Shrestha acted unreasonably. Shrestha also argues in her reply brief that she is entitled to summary judgment on the basis of qualified immunity.

### 1.  Substantial risk of serious harm

"A substantial risk of serious harm is one in which the risk is so great that it is almost certain to materialize if nothing is done." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (internal quotation marks omitted). "[A] beating suffered at the hands of a fellow detainee . . . clearly constitutes serious harm . . . ." *Brown v. Budz*, 398 F.3d 904, 910-11 (7th Cir. 2005) (internal quotation marks omitted) (Eighth Amendment

4

case).

Shrestha argues that Godfrey "cannot point to any evidence nor has she cited to any authority that throwing ice would present a sufficiently serious risk, or that throwing ice inevitably leads to a physical attack." Defs.' Reply at 3. Were Godfrey contending simply that detainees throwing ice at her posed a substantial risk of serious harm, her section 1983 claim likely would fail. But that is not Godfrey's contention. Rather, she testified that the other three detainees threatened her five minutes before they attacked her. She also testified that she had a confrontation with two of the three detainees the day before, saying, "It was her and that other girl threatening me, getting loud, trying to attack me." Def.'s Ex. C (Godfrey Dep.) at 62:5-6. A reasonable jury could infer from Godfrey's version of events that three detainees threatened to attack her and that this posed a substantial risk of serious harm.

### 2. Actual knowledge

Deliberate indifference requires a showing of an officer's "subjective awareness" of the substantial risk of serious harm to the detainee. *Riccardo*, 375 F.3d at 526. To have subjective awareness, an officer "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Gevas*, 798 F.3d at 480. A detainee, however, "need not present direct evidence of the official's state of mind." *Id*. A finding that a correctional officer "had actual knowledge of impending harm can be inferred from circumstantial evidence." *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006) (internal quotation marks omitted). A detainee's "generalized, vague, or stale concern about [her] safety typically will not support an inference that a prison official had actual knowledge that the

5

prisoner was in danger." *Gevas*, 798 F.3d at 480-81. For example, a prisoner's statement that other inmates were "'pressuring' him and 'asking questions'" is too vague to "alert the officers to the fact that there was a true threat at play." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). Likewise, a prisoner's statement that does "not identify who had threatened him and what the threats were" is insufficient to alert an officer to an impending harm. *Butera*, 285 F.3d at 606. But "[a] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas*, 798 F.3d at 481.

Shrestha argues that Godfrey "never communicated to Officer Shrestha or any other correctional officer she was in fear of being physically attacked by Goodman and her cohorts." Defs.' Mem. in Supp. of Mot. for Summ. J. at 6. Shrestha testified that she did not know of any risk, nor did she speak to Godfrey prior to the actual attack. Indeed, Shrestha denies that Godfrey knocked on the interlock window. More generally, Shrestha also denies that Godfrey came to her for help. As the Court has indicated, however, Godfrey says exactly the opposite.

The Court concludes that there is a genuine factual dispute regarding Shrestha's subjective awareness of a threat of serious harm to Godfrey. First, according to Godfrey, she identified her prospective assailants to Shrestha. Although she may not have identified her attackers by name, the evidence would support a reasonable finding that she at least used a nonverbal cue to identify them. Godfrey testified, "they [Goodman, Brownlee, and Betton] threw ice at me. I went and reached out for help [and] told the officer, Shrestha, they were throwing ice, 'Come help me.'" Godfrey Dep.

6

at 28:18-20, 29:3-6.  Second, the evidence would support a reasonable finding that Godfrey made Shrestha aware of the imminence of the threat.  Godfrey testified that the detainees threatened her five minutes before the attack, which prompted her to get Shrestha's attention.  Indeed, a photo in the record indicates that at 7:48:53 p.m., Godfrey knocked on the glass that separated the dayroom and the monitor room where Shrestha was stationed.  Another photo indicates that Shrestha came into the dayroom immediately thereafter, at 7:49:22 p.m.  The photographs support Godfrey's version of the events, in particular her testimony that she alerted Shrestha to what she perceived to be an imminent threat.  Third, the evidence would support a reasonable finding that Godfrey made Shrestha aware of the nature of the threat.  Godfrey testified that once Shrestha entered the dayroom, she told Shrestha that the detainees had threatened her and that she had a prior confrontation with Goodman and Betton in which they tried to attack her.  Fourth, the evidence would support a reasonable finding that Shrestha was aware that the threat against Godfrey was credible.  This includes the evidence that Shrestha was aware of the predatory nature of Godfrey's attackers.  Shrestha testified that Brownlee "get [sic] altercation with inmates.  She does all kinds of disturbance." Defs.' Ex. C (Shrestha Dep.) at 21:18-19.  In addition, Shrestha's testimony that, before the attack, she called a 10-10 over her radio—a signal that there is a fight in progress— reasonably could be interpreted as indicating awareness of the likelihood of violence. *See id.* at 30:3-5 ("I don't want the fight to go off, so I called 10-10.").

    **3.    Failure to act reasonably**

A prison official with actual knowledge of a substantial risk of serious harm is not liable if she "responded reasonably to the risk, even if the harm ultimately was not

7

averted, because in that case it cannot be said that they were deliberately indifferent." *Guzman*, 495 F.3d at 857 (internal quotation marks omitted).

Shrestha argues that even if Godfrey adequately apprised her of the threat from the three detainees, her actions in response were reasonable. Defs.' Mem. in Supp. of Mot. for Summ. J. at 5. But taking the evidence in the light most favorable to Godfrey, a reasonable jury could find that Shrestha failed to act reasonably. Shrestha testified that, had Godfrey told her that she felt threatened, she would have "pull[ed] [Godfrey] out from the tier" and called a supervisor per the facility's protocol. Shrestha Dep. at 43:21-44:3. And a reasonable jury could find this is or some other means of separation of protection is, in fact, what the "reasonable response" standard required. Shrestha, however, did not remove Godfrey from the other detainees. *Id.* at 43:21-45:6; Godfrey Dep. at 30:24-31:12. Even after Godfrey's eventual attackers started to argue among themselves, Shrestha still did not separate them. Instead, she simply ordered the detainees to stand outside their respective cell doors. Shrestha Dep. at 35:10-22, 49:10-21. Godfrey testified:

> I was walking down the hallway with three girls behind me shouting things at me. I walked -- tried to keep my head up and walked to my door, scared. What was I supposed to do? . . . I called the officer. She let me go alone. Didn't remove these girls from me. What was I supposed to do? Instead of removing these girls, she let me go by myself . . . with three big girls.

Godfrey Dep. at 30:24-31:12.

In sum, the evidence, viewed in the light most favorable to Godfrey, would permit a reasonable jury to find that she informed Shrestha that three detainees with a propensity for violence threatened to attack her but Shrestha failed to take reasonable steps to prevent the attack, such as separating Godfrey from the others. This would

8

permit a reasonable jury to find that Shrestha was deliberately indifferent to a risk of serious harm to Godfrey. For these reasons, entry of summary judgment is inappropriate.

**B.    Qualified immunity**

Shrestha forfeited her qualified immunity defense for purposes of summary judgment by failing to address the point in her opening brief. *See Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014) ("arguments raised for the first time in a reply brief are waived.").

## Conclusion

For the reasons stated above, the Court denies defendants' motion for summary judgment [dkt. no. 44]. The final pretrial order, final pretrial conference, and trial dates previously set by the Court remain in effect. The case is set for a status hearing on February 24, 2017 at 9:15 a.m. to discuss the possibility of settlement.

```
                                         _____
                                              MATTHEW F. KENNELLY
                                              United States District Judge
```

Date:  February 16, 2017